OHIO LIQUID DISPOSAL, INC., APPELLEE, *v.* DAWE ET AL., APPELLANTS.

(No. 691—Decided May 16, 1975.)

*Mr. John M. Eufinger,* for appellants.

*Mr. John D. Starn* and *Mr. T. Scott Johnston,* for appellees.

POTTER, J. This case involves the interrelationship and effect of R. C. Chapter 1509, entitled "Oil and Gas,"

and R. C. Chapter 6111, entitled "Water Pollution Control." Specifically, we are concerned with the construction and application of R. C. 1509.081, relative to the issuance of a liquid disposal permit, and R. C. 6111.01(A), defining "Pollution," and R. C. 6111.01(H), defining "waters of the state." The pertinent portions of these sections are hereinafter quoted in the opinion or footnotes.

Ohio Liquid Disposal, an Ohio corporation, collects liquid waste by-products from industries in Ohio and Michigan and transports them to its treatment facility located in Sandusky County, Ohio. At the present time, the liquids are stored in a series of surface lagoons. To alleviate the environmental problems associated with surface storage of liquid waste, Ohio Liquid Disposal conducted a general feasibility study for the disposal of liquids into the Mount Simon geological zone. The Mount Simon sandstone stratum is found at a depth of approximately 2,800 feet in the area in question. It underlies most of the state of Ohio and continues into states bordering Ohio and beyond. The standstone composition contains a brine solution. The water concentration is minimal. The case does not involve contamination of upper level aquifers which terminate at a level of 605 feet.

On June 6, 1972, Ohio Liquid Disposal made an application to the Ohio division of oil and gas, pursuant to R. C. 1509.081[1] for a permit to convert an existing stratigraphic

---

[1]R. C. 1509.081 (prior to the amendment of October 23, 1972). Upon receipt of an application for a permit to drill a new well, drill an existing well deeper, reopen a well, or use a well, for injection of a liquid for which a permit is required by section 1509.051 of the Revised Code, other than one which comes within the requirements of section 1509.21 or section 1509.22 of the Revised Code, the chief of the division of oil and gas shall determine whether the proposed injection would present an unreasonable risk that waste or contamination of oil or gas in the earth will occur. If he determines such risk to exist, he shall make an order rejecting the application. If he determines such risk not to exist, he shall transmit copies of the application and the map required by section 1509.06 of the Revised Code to the water pollution control board, the director of health, the chief of the division of geological survey, the chief of the division of water and, if so required

test well into an industrial subsurface disposal well. The proposed depth of the well was 2,933 feet.

Following the mandates of R. C. 1509.081, as it existed at that time, the chief of the division of oil and gas made an initial determination that the proposed injection would not present an unreasonable risk that waste or contamination of oil or gas resources would occur and, accordingly, transmitted copies of the application and attached map to the water pollution control board and to the chief of the division of geological survey for their approval. R. C. 1509.081 provides that if an approval is not obtained from each of the agencies referred to therein, the chief must deny the application. Accordingly, Ohio Liquid Disposal's application for a permit was denied when the water pollution control board at its regular meeting refused to give its approval. Hereinafter, Ohio Liquid Disposal may also be referred to as O. L. D., the water pollution control

---

by section 1509.08 of the Revised Code, to the chief of the division of mines.

The chief of the division of geological survey shall approve the application unless he determines that the proposed injection would present an unreasonable risk of loss or damage to valuable mineral resources.

The chief of the division of water shall make a report and recommendation to the director of natural resources.

The water pollution control board shall approve the application if it determines that the proposed injection will not cause pollution as defined in division (A) of section 6111.01 of the Revised Code.

Upon approval by the water pollution control board, the department of health under section 3701.19 of the Revised Code, the chief of the division of geological survey and by the chief of the division of mines, if required by section 1509.08 of the Revised Code the chief of the division of oil and gas shall issue a liquid disposal permit with such conditions as may be necessary to protect health, safety, or the conservation of natural resources, including all conditions appended by the water pollution control board and the department of health.

If the chief is unable to obtain the required approvals, he shall issue an order denying the application. In an appeal from such an order where the application was denied because of lack of approval by an agency or agencies other than the division of oil and gas, the appeal shall be taken under section 119.12 of the Revised Code as if the order had been made by the agency whose approval is lacking.

board as W. P. C. B., and the appellants in this court as the agency.

After the denial, the following order was entered on the records of the department of natural resources:

"September 19, 1972

Ohio Liquid Disposal, Inc.

504 Liberty Street

Fremont, Ohio 43420

"The following Adjudication Order, effective without prior hearing under Section 119.06 of the Revised Code, is made and entered upon the records of the Division of Oil and Gas.

"The Chief of the Division of Oil and Gas this day made and entered the following order:

"Adjudication Order No. 181

"Be It Ordered:

"That the application for a liquid disposal well filed by Ohio Liquid Disposal, Inc., as owner, is hereby denied.

"Further, such application with its various enclosures shall be returned to the applicant forthwith.

"This action is based on the following: * * *"

Ordinarily, an appeal would be taken from the agency which denied the permit, in this case the oil and gas division; however, R. C. 1509.081 provides as follows:

"* * * In an appeal from such an order where the application was denied because of lack of approval by an agency or agencies other than the division of oil and gas, the appeal shall be taken under section 119.12 of the Revised Code as if the order has been made by the agency whose approval is lacking."

R. C. 119.12, a portion of the administrative procedure acts, provides for an appeal by a party who had been "adversely affected by any order of an agency issued pursuant to an adjudication denying * * * the issuance of a license * * *."[2]

---

[2] Subsequent to the filing of this cause in the Court of Common Pleas, Sandusky County, the functions, duties and responsibilities of the water pollution control board were transferred to the Ohio environ-

O. L. D. filed in the water pollution control board a notice of its intent to appeal to the Court of Common Pleas of Sandusky County, from the order made by G. Lyman Dawe, chief of the division of oil and gas, denying the application of O. L. D. for a permit. Thereafter, in the Court of Common Pleas, G. Lyman Dawe filed a motion to dismiss the appeal based on the claim that he was not a proper party to the appeal. W. P. C. B. filed a motion to dismiss the appeal on the ground that O. L. D. had not complied with R. C. 119.06. That section provides as follows:

"No adjudication order of an agency shall be valid unless said agency is specifically authorized by law to make such order.

"No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13, inclusive, of the Revised Code. Such opportunity for a hearing shall be given before making the adjudication order except in those situations where this section provides otherwise.

"The following adjudication orders shall be effective without a hearing:

"(A) Orders revoking a license in cases where an agency is required by statute to revoke a license pursuant to the judgment of a court;

"(B) Order suspending a license where a statute specifically permits the suspension of a license without a hearing;

"(C) Orders or decisions of an authority within an agency if the rules of the agency or the statutes pertaining to such agency specifically give a right of appeal to a higher authority within such agency or to another agency and also give the appellant a right to a hearing on such appeal."

mental protection agency and its director, pursuant to Amended Substitute Senate Bill 397 which became law October 24, 1972. As a consequence, the court ordered that the Ohio environmental protection agency and the director of the Ohio environmental agency be substituted as parties in lieu of the water pollution control board."

After overruling both motions to dismiss, the trial court granted O. L. D.'s motion to admit additional evidence under R. C. 119.12, and a hearing was held in the Court of Common Pleas on December 17, 1973. At that hearing, the trial court noted that the parties stipulated that the issues on appeal were whether the Mount Simon geological horizon constituted "Waters of the state," within the meaning of R. C. 6111.01(H), as amended, and whether or not the materials to be injected would pollute "Waters of the state."

The decision of the court, based upon the evidence produced by O. L. D. in open court, depositions submitted to the court by stipulation of the parties, exhibits, motions, oral arguments and written memoranda of counsel for all parties, was that the Mount Simon geological horizon cannot be considered waters of the state within the meaning of R. C. 6111.01(H), and that the proposed injection would not pollute "waters of the state." The court ordered that the permit be granted and that the chief of the division of oil and gas promulgate reasonable conditions to be appended to the permit.

Following the trial court's denial of motions by G. Lyman Dawe and the department of natural resources to vacate and a motion for a new trial, an appeal was prosecuted to this court alleging the following assignments of error:

"1. The court of common pleas erred in holding that it had subject matter jurisdiction over an appeal from an order made pursuant to section 1509.081 where there was no adjudication hearing prior to the court's accepting the appeal.

"2. The court of common pleas erred in holding that the waters contained in the Mount Simon geological formation into which appellees propose to inject liquid industrial wastes do not fit within the statutory definition of 'waters of the state' contained in section 6111.01(H) of the Ohio Revised Code.

"3. The court of common pleas erred by failing to grant a full hearing and adjudication of all issues at trial."

The agency's first assignment of error challenges the

jurisdiction of the Court of Common Pleas to hear the appeal since there was no R. C. 119.06 adjudication hearing prior to the court's acceptance of the appeal. The agency, in support of its assignments, cites the cases of *In re Gram* (1948), 53 Ohio Law Abs. 470, and *Ivancic* v. *Accountancy Board* (1966), 8 Ohio App. 2d 296. However, in each of these cases the appeal was from the board which issued the order or denied the license. However, in this case the agency involved is an approving agency reporting to the chief of the division of oil and gas.

In the instant case, W. P. C. B. did not issue an order and O. L. D. was not a party to the W. P. C. B. proceedings. The W. P. C. B., under the statute, was to give its approval or disapproval to the chief. In effect, it did not make an R. C. 119.06 adjudication order; this order was made by the chief. R. C. 1509.081 specifically refers to R. C. 119.12 as the appeal procedure, but says nothing about the procedure to be applied by the agencies mentioned in the section. It does not refer to R. C. 119.06 or to any other section of R. C. Chapter 119.

Nevertheless, O. L. D. in this court states that it was entitled to an administrative pre-adjudication hearing, but asserts it had neither notice nor an opportunity to be heard. The only notice O. L. D. received involving the adverse action was the communication of September 19, 1972. O. L. D., in effect, could not have requested a hearing prior to the adjudication because it never received notice that its application was to be ruled on. O. L. D. attempted to arrange an administrative adjudication hearing after notice had been filed of the appeal to the Court of Common Pleas, but no hearing was provided.

The agency admits it did not follow the statute[3] but asserts that O. L. D. should have, by mandamus, required it to do that which it was aware by statute it should do but elected not to. We hold that the agency is estopped to assert error based on its own violations. Secondly, it did not

[3] R. C. 1509.081 has been amended to provide for an administrative appeal to the Ohio environmental board of review.

afford a hearing, even after it was requested to do so. Thirdly, the agency in the appeal to the Court of Common Pleas was afforded, in effect, a *de novo* hearing, at which time it could have submitted any evidence to establish the merits of its claims and it failed to do so. Finally, considering the agency's argument on the law in the Court of Common Pleas and in this court, an adjudication hearing would be a vain act as the agency clearly asserts that no approval would ever be forthcoming for the injection of industrial fluids into the Mount Simon stratum. We, therefore, find appellant's first assignment of error not well taken.

Having so ruled on the first assignment of error, the cause, both in the Court of Common Pleas and on appeal to this court, resolves into a determination of the statutory definition of "Waters of the state" contained in R. C. 6111.01(H). Appellant's assignment of error No. 2 is to the effect that the Court of Common Pleas erred in holding that the water contained in the Mount Simon geological formation was not water of the state as so defined.

R. C. 6111.01(H) reads as follows:

"(H) 'Waters of the state' means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems, and all other bodies or accumulations of water, surface and underground, natural or artificial, which are situated wholly or partly within, or border upon, this state, or are within its jurisdiction, except those private waters which do not combine or effect a junction with natural surface or underground waters."

This court is limited to the facts as we find them in the record below and we must determine the merits of the assignment of error based on that record. In the determination of whether or not the Mount Simon stratum contained "waters of the state" and if injection of industrial wastes into that zone might possibly contaminate other zones that do contain waters of the state, the agency presented no probative evidence except that adduced by the cross examination of O. L. D.'s witnesses. It was established by a preponderance of the evidence that the industrial fluid injected

into the Mount Simon zone cannot escape. The injected fluids are trapped in the Mount Simon zone and cannot contaminate other strata. Lateral movement is minimal.

Judge Robert Wilson, in a well reasoned decision and judgment entry filed in the lower court, applied the rule of *ejusdem generis* (see *State v. Aspell* [1967], 10 Ohio St. 2d 1) and found on the evidence that the Mount Simon stratum did not contain "waters of the state" as defined by the legislature. We concur in his findings. To find otherwise, the trial court and this court would also have to rule that R. C. 6111.01 (H) effectively repealed R. C. 1509.-081. The language, rules of statutory construction and the legislative history require a contrary finding.

R. C. 6111.01 (A) defines pollution as follows:

"'Pollution' means the placing of any sewage, industrial waste, or other wastes in any waters of the state."

O. L. D. admits that its industrial liquids are pollutants and, in fact, disposal of industrial pollutants is its business. The agency says that its requested interpretation and definitions would not, in effect, repeal R. C. 1509.081 because O. L. D. could place non-pollutants in the well. This suggestion as to how O. L. D. should proceed is somewhat less than realistic. It would also eliminate a waste disposal system which the legislature has approved. R. C. 6111.04 (B) exempts industrial waste disposal systems from its operation when a permit has been issued under R. C. Chapter 1509. A finding that the stratum does not contain "waters of the state" eliminates any conflict with federal legislation.

The issuance of a permit does not terminate effective state supervision. R. C. 1509.081 provides that the chief of the division of oil and gas shall issue such permit with such conditions as may be necessary to protect health, safety, or the conservation of natural resources, including all conditions appended by the now director of environmental protection. The chief may order that a liquid disposal permit be suspended and the operation ceased if he determines that the well is being operated in violation of law, regulation, order, or condition of the permit. The judg-

ment of the lower court contained the foregoing as conditions to the issuance of the permit.

For the foregoing reasons, we therefore, find that assignment of error No. 2 is not well taken. The assertions in the third assignment of error, considering the stipulations made in the trial court and in the record, are not well taken. The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

Brown, P. J., and Wiley, J., concur.