WEIR, DIRECTOR, OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT,
*v.* RIMMELIN ET AL., APPELLEES.

[Cite as Weir *v.* Rimmelin (1984), 15 Ohio St. 3d 55.]

(No. 84-246—Decided December 28, 1984.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Michael H. Igoe* and *Mr. Mark G. Kelsey,* for appellant.

*Messrs. Schnorf & Wanick, Mr. David M. Schnorf* and *Mr. Stephen C. Roach,* for appellee Rimmelin.

*Mr. Daniel Bishop,* for appellee Root Outdoor Advertising, Inc.

HOLMES, J. This appeal centers on the authority of different governmental entities to regulate outdoor advertising billboards within a munici-

pality's corporate boundaries. The precise issue is whether a city has exclusive authority to enforce the regulations pertaining to such devices. Based on the following, we hold that where state and local regulations concerning unlawful conduct do not conflict, the state and municipality have concurrent authority under the police power to enforce their respective directives inside the corporate limits of the city.

In 1965, Congress passed the Highway Beautification Act (Section 131 et seq., Title 23, U.S. Code) in an effort to achieve uniformity in statutory provisions which forbid the maintenance of advertising structures within a specified distance from interstate highways. The Act currently provides financial incentives to states which prohibit advertising structures along interstate highways in conformance with the requirements of the federal legislation. Specifically, the Act allows a ten percent reduction in available federal highway funds if a state does not effectively control the maintenance of such advertising devices. In 1971, the Ohio General Assembly amended provisions within R.C. Chapter 5516 and in 1972, Ohio Adm. Code Chapter 5501:2-2 was promulgated to reflect the regulations contained in the Highway Beautification Act.

The city of Toledo enacted a comprehensive sign code in Chapter 1377 et seq., Title 9, Toledo Municipal Code. Appellees contend that Toledo has exclusive authority to regulate outdoor advertising within its corporate limits pursuant to Section 3, Article XVIII of the Ohio Constitution. Appellees rely on the line of home rule cases which permit a city to exercise its powers of local self-government in the absence of a conflicting general law enacted pursuant to the state's police power. See Hilton v. Toledo (1980), 62 Ohio St. 2d 394 [16 O.O.3d 430]; Dies Electric Co. v. Akron (1980), 62 Ohio St. 2d 322 [16 O.O.3d 365]; Canton v. Whitman (1975), 44 Ohio St. 2d 62 [73 O.O.2d 285]; State, ex rel. Canada, v. Phillips (1958), 168 Ohio St. 191 [5 O.O.2d 481]. However, our prior cases are not precise guidelines for the issue presented as they do not grant a municipality the exclusive authority to regulate certain conduct within its boundaries.

The Home Rule Amendment to the Ohio Constitution confers a significantly high degree of sovereignty upon municipalities. Angell v. Toledo (1950), 153 Ohio St. 179 [41 O.O. 217]. However, the amendment does not provide cities the absolute power of local self-government. Whitman, supra; State, ex rel. Giovanello, v. Lowellville (1942), 139 Ohio St. 219. Where the General Assembly has enacted legislation pursuant to the state's police power which governs a statewide concern, the statute takes precedence over ordinances enacted under the home rule authority of municipalities. Clermont Environmental Reclamation Co. v. Wiederhold (1982), 2 Ohio St. 3d 44; State, ex rel. Evans, v. Moore (1982), 69 Ohio St. 2d 88 [23 O.O.3d 145]; Cleveland Elec. Illum. Co. v. Painesville (1968), 15 Ohio St. 2d 125 [44 O.O.2d 121].

There is little doubt that the regulation of outdoor advertising along interstate and primary highways is a matter of statewide concern, and a

reasonable and proper exercise of the state's police power. *Ghaster Properties, Inc.* v. *Preston* (1964), 176 Ohio St. 425 [27 O.O.2d 388]. See, also, *Stuckey's Stores, Inc.* v. *O'Cheskey* (1979), 93 N.M. 312, 600 P. 2d 258; *Newman Signs, Inc.* v. *Hjelle* (N.D. 1978), 268 N.W. 2d 741, appeal dismissed (1979), 440 U.S. 901; *Natl. Advertising Co.* v. *State* (1977), 91 N.M. 191, 571 P. 2d 1194; *Markham Advertising Co.* v. *State* (1968), 73 Wash. 2d 405, 439 P. 2d 248, appeal dismissed (1969), 393 U.S. 316; *In re Opinion of the Justices* (1961), 103 N.H. 268, 169 A. 2d 762. Although the state's regulatory power is quite apparent, we do not find any legislative intent in the federal Highway Beautification Act, or R.C. Chapter 5516, to preempt municipal regulation of outdoor advertising signs. Cf. *Art Neon Co.* v. *City and County of Denver* (C.A. 10, 1973), 488 F. 2d 118, certiorari denied (1974), 417 U.S. 932. In fact, R.C. 715.27[1] allows municipal regulation of billboards within city corporate limits. Thus, we conclude that municipal corporations may lawfully regulate outdoor advertising devices as a legitimate exercise of local self-government if such regulations do not conflict with a general state law. 7 McQuillin, Municipal Corporations (3 Ed. Rev. 1981), Section 24.380.

Under the general concept of preemption, a local ordinance is valid if it is consistent with the related state statute. The query is whether the local regulation complements the statute.

In determining if a municipal ordinance is in conflict with a general state statute, "the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Village of Struthers* v. *Sokol* (1923), 108 Ohio St. 263, at paragraph two of the syllabus. In the present case, the municipal ordinance does not specifically prohibit the maintenance of outdoor advertising structures within six hundred sixty feet of an interstate highway or within five hundred feet of a highway interchange or exit ramp. Nevertheless, the regulation prohibits an outdoor advertising device which "[v]iolates any provision of any Federal or State of Ohio law relative to outdoor advertising." Chapter 1393.14(h), Title 9, Toledo Municipal Code. This provision clearly satisfies the *Sokol* standard as the municipal ordinance incorporates state law.

It does not necessarily follow, as appellees suggest, that due to the compatibility of the ordinance and statute, the municipality has exclusive authority to enforce its regulations thereby precluding enforcement of state laws within city boundaries. A review of case law does not present

---

[1] R.C. 715.27 states in pertinent part:

"Any municipal corporation *may*:

"(A) Regulate the erection of fences, billboards, signs, and other structures, within such municipal corporation, and provide for the removal and repair of insecure billboards, signs, and other structures." (Emphasis added.)

Appellees contend that the above-quoted statute provides all cities exclusive authority to enforce billboard regulations inside city limits. However, we fail to see a grant of such magnitude within the permissive language of the statutory provision.

any case which would support this view. Rather, it has long been recognized by this court that a state statute and a municipal ordinance have the same force and effect within city limits. *Schell* v. *DuBois* (1916), 94 Ohio St. 93, 103. See, generally, *Zucht* v. *King* (1922), 260 U.S. 174; *Hayes* v. *Michigan Central RR. Co.* (1884), 111 U.S. 228, 237; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Grambo* (1921), 103 Ohio St. 471; 56 American Jurisprudence 2d (1971), Municipal Corporations, Sections 407, 434, and cases cited therein.

We believe the present situation is analogous to the enforcement of drunk driving regulations. The state and many municipalities have similar provisions which prohibit persons from operating a motor vehicle while under the influence of alcohol. A state highway patrolman has the duty to enforce the state's provision along our interstate and primary highway systems. The officer certainly possesses the authority to stop a driver suspected of driving under the influence on these highways. If we were to agree with appellees' theory, however, we would place a barrier at the city's corporate line and prevent the patrolman from enforcing state law once he entered the municipality. It would then be left to the city to exclusively enforce its own regulations inside the barrier. This would lead to the erratic enforcement of both state and local laws which is clearly not an acceptable result.

Therefore, we hold that where state and local regulations concerning unlawful conduct do not conflict, the state and municipality have concurrent authority under the police power to enforce their respective directives inside the corporate limits of the city.

Accordingly, the judgment of the court of appeals is reversed, as the state of Ohio, as well as the city of Toledo, has authority to enforce outdoor advertising regulations within city limits. The cause is remanded to the trial court for a determination as to the alleged unlawful locations of the billboards in question and whether the state of Ohio is estopped from asserting the violations under the facts presented.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., FORD, SWEENEY and J. P. CELEBREZZE, JJ., concur.

LOCHER and C. BROWN, JJ., dissent.

FORD, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

CLIFFORD F. BROWN, J., dissenting. The majority opinion concedes that the city of Toledo has concurrent authority to enforce advertising regulations within city limits. Proceeding from this premise it should be

noted that R.C. 5516.11 permits substitution within industrially and/or commercially zoned areas of a local zoning authority's regulations controlling the "size, lighting, and spacing of outdoor advertising devices which are not inconsistent with the intent of this act [R.C. Chapter 5516] and which are a part of a bona fide commercial and industrial zoning plan," in lieu of the controls encompassed by R.C. 5516.02(D), 5516.06 and 5516.09.

Pursuant to the foregoing concurrent authority to regulate, the city of Toledo has passed outdoor advertising regulations, *i.e.,* Chapter 1377 *et seq.,* Title 9, Toledo Municipal Code. Chapter 1393.14 states in pertinent part, that:

"The following signs are also prohibited which:

"* * *

"(h) Violate[ ] any provision of any Federal or State of Ohio law relative to outdoor advertising; * * *"

This city ordinance clearly recognizes the authority of relevant state and federal laws regulating outdoor advertising signs.

R.C. 5516.10 provides that within municipalities applications for such a permit shall be made to the municipal authority designated by that municipality's legislative authority. R.C. 5516.10 is clear in its grant of authority to the municipalities. The power to issue or to deny such permits, as are at issue in this case, rests with the municipality, except under R.C. 5516.02(A) and 5516.06.

It has been further decided in *Art Neon Co.* v. *City and County of Denver* (C.A. 10, 1973), 488 F. 2d 118, that neither the Federal Highway Beautification Act nor appropriately enacted state regulatory statutes preempt municipal ordinances regulating outdoor advertising signs.

The agreement between the federal government and state authorities dated June 28, 1961, executed by the Ohio Director of Highways and the Federal Highway Administrator of the United States Department of Commerce, spells out this absence of preemption of municipal ordinances where it states in relevant part: "There shall be excluded from application of the said national standards any segments of the Interstate System which traverse commercial or industrial zones within the boundaries of incorporated municipalities, as such boundaries existed on September 21, 1959, wherein the use of real property adjacent to the Interstate System is subject to municipal regulation or control, or which traverse other areas where the land use, as of September 21, 1959, was clearly established by state law as industrial or commercial." This agreement was authorized by the Federal Highway Beautification Act, Section 131(d), Title 23, U.S. Code.[2]

---

[2] Section 131(d), Title 23, U.S. Code, provides:

"In order to promote the reasonable, orderly and effective display of outdoor advertising * * * signs, displays, and devices whose size, lighting and spacing, consistent with customary

This valid agreement between the executive branches of the state and federal governments intends that all outdoor advertising signs in industrial or commercial zones within municipalities as of September 21, 1959, are excluded from state control and subject to the municipal legislative control.

Such interpretation and application of this agreement for carrying out national policy is consistent with the power granted to the state Director of Transportation to make such agreement under R.C. 5516.09, which explicitly authorizes the director to promulgate and enforce regulations consistent with outdoor advertising and national policy governing any aspect of the advertising devices. The fact that the federal government, through its authorized federal highway administrator, agreed with the Ohio Director of Highways to exclude the areas where the defendants' signs are located from operation of the state law reinforces the conclusion that the defendants have a right to maintain the signs where they are now located subject only to the regulation by the zoning and sign authorities of the city of Toledo. This exception does not embrace the seven signs in the area that were outside the limits of the municipal corporation prior to September 21, 1959, but applies to the eight signs inside the corporate limits on that date.

The foregoing analysis particularly pertaining to the 1961 federal-state agreement is sufficient to support a decision that the eight signs within the corporate limits of Toledo on September 21, 1959, are lawfully there, requiring affirmance of the lower courts pertaining to such eight signs.

For the reasons that follow, the seven signs in the area that were outside the limits of the municipal corporation prior to September 21, 1959, are also lawfully there, and require affirmance of the lower courts pertaining to these seven signs.

The State Highway Act, R.C. Chapter 5516, contains several of the following exceptions to the application of the Act.

R.C. 5516.10 provides, in part, that "[a]pplications for such permits shall be made to the director or, within municipalities, to the municipal authority designated by its legislative authority * * *."

R.C. 5516.06 generally provides that "[n]o advertising device shall be erected within six hundred sixty feet of the edge of the right-of-way of a highway on the primary system * * *."

R.C. 5516.06(F) makes an exception which allows "[a]dvertising devices located in zoned or unzoned industrial or commercial areas adjacent to highways on the primary system" to be set back less than the otherwise required six hundred sixty feet.

R.C. 5516.02 provides generally that "[n]o advertising device shall be

---

use is to be determined by agreement between the several States and the Secretary, may be erected and maintained within six hundred and sixty feet of the nearest edge of the right-of-way * * * as may be determined by agreement between the several States and the Secretary. * * *"

erected or maintained within six hundred sixty feet of the edge of the right of way on the interstate system * * *." However, an exception to this general proscription in R.C. 5516.02(D) exempts "[a]dvertising devices which are located in commercial or industrial zones traversed by segments of the interstate system * * *."

R.C. 5516.11 grants local controls for billboard advertising to the city of Toledo as follows:

"Whenever a state, county, or local zoning authority has established regulations which control the size, lighting, and spacing of outdoor advertising devices which are not inconsistent with the intent of this act and which are a part of a bona fide commercial and industrial zoning plan, such regulations will be accepted in lieu of the controls provided in division (D) of section 5516.02 and in sections 5516.06 and 5516.09 of the Revised Code * * *."

R.C. 5516.11 refers to the "intent" of the Highway Advertising Act. That intent and purpose is fulfilled by the Toledo Municipal Sign Code in Chapter 1377.01 as follows:

"The purpose of this Title Nine—Sign Code is to establish standards for the fabrication, erection and use of signs, symbols, markings and/or advertising devices within the City. These standards are designed to protect and promote the public welfare, health and safety of persons within the community and to aid in the development and promotion of business and industry by providing sign regulations which encourage aesthetic creativity, effectiveness and flexibility in the design and use of such devices without creating detriment to the general public."

The Toledo Municipal Sign Code establishes detailed regulations regarding the size of signs, height, spacing and distance from highways permitted in various zoning districts. Toledo Municipal Code Chapters 1385, 1387 (particularly 1387.05), 1389 and 1391.

Moreover, the state of Ohio, which includes the plaintiff as part thereof, by issuing the original sign permits to the defendants through the Director of Transportation, and by renewal of several of such permits in later years, is estopped to assert sign violations now, and has waived that right. See *Toledo* v. *Custer* (1970), 24 Ohio St. 2d 152 [53 O.O.2d 351]; *Ohio Liquid Disposal, Inc.* v. *Dawe* (1975), 46 Ohio App. 2d 197 [75 O.O.2d 344]; *Cleveland* v. *Cleveland Electric Illuminating* (N.D. Ohio 1977), 440 F. Supp. 193; *Yoshida* v. *Liberty Mut. Ins. Co.* (C.A. 9, 1957), 240 F. 2d 824, 829.

Finally, it must be noted that the Ohio General Assembly specifically granted municipalities the authority to regulate outdoor billboards in R.C. 715.27(A). See fn. 1.

For all of the above reasons, I dissent. Both lower courts made a correct analysis, reached a just result, and therefore should be affirmed.

LOCHER, J., concurs in the foregoing dissenting opinion.