## Dawson v. Stow
*[Cite as 4 AOA 346]*

Case No. 14242
Summit County, (9th)
Decided June 13, 1990

*Edward C. Maher, Attorney at Law, 120 E. Mill St., Suite 402, Akron, OH 44308, for Plaintiff.*

*L. James Martin, Attorney at Law, 3760 Darrow Rd., Stow, OH 44224, for Defendant.*

CIRIGLIANO, J.

Appellant City of Stow (Stow) appeals from the decision of the trial court finding Stow's actions in suspending appellee, William Dawson, from the City of Stow Police Department to be void because Stow failed to follow the mandates of R.C. 737.12 and R.C. 124.34 and that the action was not moot due to Dawson's retirement from the police force. We affirm.

*Facts*

On July 22, 1987, Officer Dawson and Officer J.J. Taylor, now deceased, were involved in an altercation in the police department's parking lot. There is no record indicating whether Dawson's superior officer relieved him of duty an investigation. Based on the investigation of the incident and interviews with Dawson and witnesses, Chief of Police Robert Tilton recommended, but did not submit certification, that Mayor Coughlin suspend Dawson. In Tilton's recommendation, submitted to the mayor almost seven months after the altercation, Chief Tilton stated:

"I would recommend that Officer Dawson be suspended, without pay, for a period of not less than fifteen days for his conduct. It is my opinion that before any such actions be taken that a complete psychological fitness profile be completed on Officer Dawson to certify his fitness to continue as a police officer.

"Should the results of this testing prove negative, I would recommend Officer Dawson be placed on immediate leave, pending a hearing before the pension board, for a stress-related disability."

On April 20, 1988, the mayor summoned Dawson to his office. Prior to discussing the incident with Dawson, Mayor Coughlin presented Dawson with a letter which informed Dawson that he was suspended, but that the suspension would be stayed if he submitted to psychological evaluation.

To preserve his rights, Dawson complied with R.C. 124.34 and appealed to the Civil Service Commission (Commission). At the hearing before the Commission, Mayor Coughlin testified to the possible confusion the suspension letter may have generated:

"* * *.

"Q. When did not first become aware of that incident?

"MAYOR Well, of course I knew about it as a City Councilman, because I had served on City Council before I became Mayor.

"Q. Subsequent to your becoming Mayor, did you receive a recommendation from the police chief concerning that matter?

"MAYOR Yes, in February, 1988.

"* * *.

"Q. Upon receipt of that recommendation, did you have occasion to discuss the matter with Officer William Dawson?

"MAYOR Yes.

"Q. On how many occasions did you do that?

"MAYOR Basically on one occasion.

"Q. When was that?

"MAYOR That was in April of 1988.

"Q. What transpired at that meeting?

"MAYOR Upon the recommendation of what the disciplinary action was sent to me in the letter dated February 10th, and discussions with Mr. Dawson, I went ahead and gave him a couple options with the letter dated April 20th, stating about the 15-day suspension that I was upholding in regards to the Chief's recommendation and offered to hold that implementation if he would submit to a psychological evaluation.

"* * *.

"Q. When you sat down with Bill, what kind of a discussion did you have with him; did you ask him about the incident?

"MAYOR I asked him about it, we talked about the incident. I had the recommendation in front of me of the Chief, and we talked about a number of other things in regards to the option of having a psychological evaluation taken at the City's expense, on his time -- or rather, as he would be working for the City, which would be our time.

"Q. What did he say to you in that regard?

"MAYOR Well number one, you know, his comment to me in regards to the psychological evaluation was, as long as we're paying for it, you know, he would -- it would be fine by him; and the only difference would be that he wanted to contact his lawyer before we made any implementation of that.

"And Bill and I had talked since then in regards to kind of a misunderstanding that I thought the suspension was the item that he was going to talk to his lawyer about and not necessarily the -- and not the setting up an evaluation, which unfortunately had commenced the next day. I know this upset Bill, but it was a misunderstanding between the two of us.

" An so I stayed everything until he did meet the next week with his attorney.

" * * *." T.O.P. 49-51.

Several other witnesses, including Dawson, testified at the hearing. Based upon the evidence, the Civil Service Commission upheld Dawson's suspension.

Dawson timely appealed to the court of common pleas. In its journal entry of August 15, 1989 the trial court stated:

"* * *.

"This Court is guided by the decision of the Ninth District Court of Appeals in *Burch* v. *City of Cuyahoga Falls* (1987), Case No. 12969 and finds that the actions of the City of Stow in suspending Officer Dawson were void because of its failure to follow the mandates of R.C. 737.12 and R.C. 124.34.

"The court further finds that the recent retirement of the appellant Dawson does not render the appeal moot and, therefore, dismisses the Appellee's motion to dismiss the appeal."

In its appeal from this decision, Stow assigns three errors.

### ASSIGNMENT OF ERROR I

"The common pleas court erred in applying 737.12 to this suspension."

R.C. 737.12 reads as follows:

"The chief of police and the chief of the fire department shall have exclusive right to suspend have exclusive right to suspend any of the deputies, officers, or employees in their respective departments and under their management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable and just cause.

"If any such employee is suspended, the chief of police or the chief of the fire department, as the case may be, shall forthwith certify such fact in writing, together with the cause for such suspension, to the director of public safety, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon. Such judgment, if the charge is sustained, may be either suspension, reduction in rank, or dismissal from the department. Such judgment shall be final except as otherwise provided by law.

"The director, in any investigation of charges against a member of the police or fire department, shall have the same powers to administer oaths and to secure the attendance of witnesses and the production of books and papers as are conferred upon the mayor."

Under the authority of *Burch* v. *Cuyahoga Falls,* (Sept. 2, 1987), Summit App. No. 12969, unreported, the trial court applied R.C. 737.12, to

the facts of this case. Stow contends that the *Burch* case is inapplicable because the parties in *Burch* conceded that R.C. 737.12 applied to the facts. In this case Stow contends that, pursuant to the home rule provisions of Sections 3 and 7 of Article XVIII of the Ohio Constitution, it has exercised its powers of local self-government under its charter to regulate the discipline of its officers by enacting its own ordinance. Stow contends that because the state and local laws conflict, its own charter prevails because the procedure for disciplining police is a matter appropriate for local regulation and not one of statewide concern. See *Weir* v. *Rimmelin* (1984), 15 Ohio St. 3d 55, 56.

We agree, within the parameters necessary to protect the due process rights of the person subjected to discipline and in accordance with law, that a municipality may legislate so as to regulate the internal operation of its police force. Stow has done so. We turn now to those Stow municipal code sections applicable to these facts.

Section 701.03 provides:

*"701.03 SUSPENSION.*

"(A) A member or employee may be suspended by the mayor, acting as safety director, or chief of police for incompetence, inefficiency, drunkenness, disorderly or immoral conduct, discourteous treatment of any citizen or of the public at large, insubordination, neglect of duty, or for any other just and reasonable cause. A suspension may be for any length of time deemed reasonable and proper, and depending upon the circumstances of the individual case.

"(B) The chief of police shall, upon receiving a report that a member or employee has been relieved of duty, or upon receiving a statement of charges against any member or employee, conduct or cause to be conducted a full inquiry into the circumstances surrounding the incident.

"(1) The chief of police, upon a determination that the member or employee is guilty of the violation charged, may suspend the member or employee, recommend a reduction in grade for the member or employee, or recommend the dismissal of the member of employee.

"(2) The chief of police shall forthwith in writing certify the fact of the suspension, together with the cause thereof to the mayor.

"(3) In the event the suspension is 5 days or less, the member, or employee suspended has no right of appeal.

"(C) (1) Upon certification of a suspension by the chief of police of a member or employee of the police division, the mayor as safety director, shall

within 5 days from the receipt of this certification proceed to inquire into the cause and render judgment thereon, which judgment, if the charge be suspension, reduction in rank or dismissal.

"(2) The charges shall be served on the member or employee and a copy of the charges and proceedings appertaining thereto shall be filed with the civil service commission."

Section 701.02 defines the term "relieved of duty" as used in Section 701.03 (B) as follows:

*"701.02 RELIEVED FROM DUTY.*

"A member or employee may be temporarily relieved from duty by his immediate superior for: incompetence; inefficiency; drunkenness; disorderly or immoral conduct, discourteous treatment of any citizen or of the public at large; insubordination; neglect of duty; or any other just and reasonable cause.

"(A) A member or employee relieved from duty by immediate his superior shall be ordered to appear before his shift or bureau commander immediately upon being relieved duty.

"(B) The shift or bureau commander shall investigate the circumstances that led to the relief from a member of his command, and if he concurs in the action of the immediate superior in that relief, he shall order the relieved member or employee to appear before his division commander at the soonest possible time consistent with the division commander's working schedule, but in no instance later than the next scheduled working day of the division commander.

"(C) A member or employee temporarily relieved from duty by his immediate superior and ordered by his shift or bureau commander to appear before his division commander shall be relieved from duty until such a time as he has been ordered to return to duty competent authority.

"(D) An immediate superior who has temporarily relieved a member or employee from duty shall as soon as is practical, but in no case later than the end of his current tour of duty, submit a full written report to his shift or bureau commander of the incident.

"(E) A shift or bureau commander upon reviewing a report of temporary relief from duty of one of his subordinates shall as soon as practical, but in no case later than the end of his current tour of duty, submit a full written report, to accompany the report of the immediate superior, of his investigation of the incident, his conclusions and actions taken to his division commander.

"(F) A division commander shall, upon receiving a report that a member employee under his command has been relieved from duty, conduct a full inquiry into the circumstances surrounding the incident and report his findings in writing to the chief of police. The division commander shall include a statement of the charges against the member or employee and any recommendations that he might have. (Ord. 1977-7, passed 1-13-77)."

We have read the municipal code sections and R.C. 737.12. We are baffled by Stow's suggestion that there is a conflict which would invoke home rule.

Section 701.03(A) provides for the general power of the mayor and chief of police to suspend. If we accept Stow's reading of its own code, then the mayor may suspend just by giving an employee written reasons for the suspension. This is hardly protective of the employee's rights and cannot be sanctioned by this court. However, if we read Section 701.03 as giving the mayor power of suspension only upon compliance with the procedural safeguards set forth in Section 701.03(B) through (C), we find R.C. 737.12 and local law to be in total harmony.

Stow's failure to comply with its own laws also results in its failure to follow state law. Accordingly, we overrule Stow's first assignment of error.

### ASSIGNMENT OF ERROR II

"The court erred in finding the city failed to follow the mandates of 124.34, R.C. The required statutory notice met with the requirements of Section 124.34, R.C."

We address this assignment of error on its own merit only. However, our disposition of the first assignment of error technically renders this issue moot.

Our function as an appellate court is limited to determining whether the trial court abused its discretion. *Lorain City Bd. of Edn.* v. *State Emp. Relations Bd.* (1988), 40 Ohio St. 3d 257, 260-61. Based upon our review of the record we cannot say the trial court abused its discretion. Accordingly, we overrule the second assignment error.

### ASSIGNMENT OF ERROR III

"The trial court erred in failing to dismiss this matter as moot."

Stow argues that Dawson's retirement renders moot any action regarding his employment relationship with Stow. We do not agree.

This action arose prior to his retirement. Dawson is entitled to mitigate any adverse

effects that this action has had upon his record and/or compensation.

We overrule this assignment of error.

### Summary

Based on the foregoing reasons we overrule Stow's three assignments of error and affirm the decision of the trial court.

*Judgment affirmed.*

CACIOPPO, P. J., concurs.

QUILLIN, J., dissents

Dawson was charged with striking another officer. The mayor, after a pre-suspension meeting with Dawson, suspended him for fifteen days. Dawson appealed to the civil service commission which, after a full hearing, upheld the suspension.

The mayor acted as empowered by the charter and the ordinances. I would reverse.