[Cite as *State v. Smith*, 2018-Ohio-2366.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2017-0044 |
| IVAN J. SMITH | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No.  CR2016-0317


JUDGMENT:                       Affirmed


DATE OF JUDGMENT ENTRY:         June 18, 2018


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

D. MICHAEL HADDOX                         ERIC J. ALLEN
PROSECUTING ATTORNEY                      THE LAW OFFICE of ERIC J. ALLEN, LTD
GERALD V. ANDERSON II                     4605 Morse Road
ASSISTANT PROSECUTOR                      Suite 201
27 North Fifth Street, P.O. Box 189       Gahanna, Ohio  43230
Zanesville, Ohio  43702-0189

*Wise, P. J.*

**{¶1}** Defendant-appellant Ivan J. Smith appeals his convictions entered in the Muskingum County Court of Common Pleas following a jury trial.

**{¶2}** Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On July 13, 2016, Muskingum County Sheriff's dispatch received a complaint about the odor of marijuana coming from the residence located at 128 Hamline Ave., Zanesville, Ohio. The complaint also stated that the occupants at the residence were trafficking in drugs.

**{¶5}** Colleena Johnson ("Colleena") and Appellant lived at 128 Hamline Ave., 130 Hamline Ave. was vacant at the time. (Trial, Vol. I, p. 157, 159; Vol. II, p. 455). Their residence is a duplex with 130 Hamline Ave., wherein 128 is on the south side and 130 is on the north side. (T. at 157).

**{¶6}** In response to the complaint, officers approached the residence to conduct a "knock and talk". (T. at 152-53). Officers noticed the odor or raw marijuana, which became stronger when Colleena came out after the officers knocked. (T. at 155-56). Colleena refused to give consent for a search of the residence. Officers secured the residence while Detective Matt Wilhite ("Det. Wilhite") left to procure a search warrant. (T. at 156). Colleena, who was not permitted to re-enter the residence without being accompanied by an officer, left on foot. It took a little over an hour for Det. Wilhite to return with a signed search warrant.

{¶7} Additionally, officers received consent from Dan Reinstetle, the owner of the duplex, to search the vacant 130 Hamline Ave. residence to confirm the odor of marijuana was not coming from it. (T. at 159). Officers also found nine (9) marijuana plants outside, on the south side (128 side) of the duplex, in pots that resembled pots that were later discovered inside 128 Hamline Ave. (T. at 167). The marijuana plants outside had labels on them to identify their strand. (T. at 169).

{¶8} Inside 128 Hamline Ave., officers found Christmas tags that read "To Ivan, From Col", mason jars with labelling, and Ziploc vacuum sealed bags with handwriting that was similar to the handwriting on the labels on the marijuana plants outside. (T. at 170-71, 173). There was also marijuana residue on the bottom of the mason jars and the labels for other strands of marijuana. (T. at 171-72).

{¶9} Officers also found five (5) butane cans inside the residence, which Det. Wilhite testified were frequently used to process marijuana to manufacture hashish. (T. at 172). Hashish was also found. (T. at 467-69).

{¶10} During the search, officers also found duct tape that matched duct tape on the marijuana plants outside, as well as duct tape that would later be found in the basement and at a storage unit. (T. at 173-74).

{¶11} A book named Cannabis Indica was found next to a cedar chest in a room upstairs. (T. at 176). Inside that cedar chest were four (4) more mason jars with labels, vacuum sealed bags, and a plastic tote that had Appellant's fingerprint on it. (T. at 177, 392-94). There was a desk in the room that had mail and multiple documents in the name of Appellant. (T. at 83-84, 205). Officers also found a Styrofoam cup with methamphetamine inside of it. (T. at 180, 182, 301, 467-69).

{¶12} In a closet, behind some clothes was a staircase that led to the attic, which had been secured by coat hanger wire. (T. at 184). The attic can only be accessed from 128 Hamline Ave., not from 130 Hamline Ave. (T. at 166, 269-70). In the attic, eighty-four (84) full plants, fresh, with wet and damp soil, were found, as well as a large, plastic, industrial grinder with ground-up marijuana inside, more mason jars, a vacuum sealer, and other dried marijuana were found. (T. at 185, 188-89, 317-18). Appellant's fingerprints were on the grinder. (T. at 189, 392-94). There was no lighting in the attic and the temperature was above 100 degrees. (T. at 185, 273).

{¶13} Det. Wilhite testified about his knowledge of marijuana and that marijuana plants cannot grow in a space of that temperature and with no light, concluding that the plants had to have recently been placed there. (T. at 185-86, 188, 273). Colleena would not have had time to move the plants to the attic. (T. at 276).

{¶14} In the basement officers found three (3) constructed hydroponic grow rooms wrapped in heavy black plastic with reflective plastic on the inside, grow lights, hydroponic stems, filters, all used to grow marijuana. (T. at 192). There were also hydroponic clay balls and bamboo sticks, which matched hydroponic clay balls and bamboo sticks that were found with the outside marijuana plants. (T. at 194). There was a box for grow lights with the name Howard Bailey on it, who previously worked at Iroc's Hair Design Studio ("Iroc's"), which is the barbershop business that Appellant owns, located at 125 State Street. (T. at 196, 253). There was blue rope and blue pulleys holding up the LED grow lights from the ceiling. (T. at 196). Howard Bailey's fingerprint was on one of the LED grow lights, which he testified he had previously sold to Appellant. (T. at 255, 299, 366, 369). There was also Appellant's yellow-hooded sweatshirt, which he had been seen wearing

around town, and the matching pants were located in his vehicle, parked outside. (T. at 197, 231). Finally, a bag of packaged (processed) marijuana was found inside the dryer. (T. at 414).

{¶15} Appellant's Ford Explorer was parked at 128 Hamline Ave. and was also searched. (T. at 229-31). Located in the vehicle was a blue pulley, a pair of yellow pants, Appellant's wallet and identification, credit cards, and numerous documents and receipts, including an electric bill for Iroc's, a Huntington Bank bill in the name of Appellant, and another Huntington Bank bill in the name of Ivan J. Smith dba Iroc's Hair Design Studios. (T. at 231-32, 236, 319-320).

{¶16} In the cedar chest was also a payment book/receipts for Five Star Store It in the name of Appellant and his company Iroc's. (T. at 203-04). That storage unit was rented in Appellant's name for Iroc's. (T. at 252-53, 409). A K9 alerted to the presence of narcotics in the storage unit that Appellant/Iroc's was renting. (T. at 332). A search of the storage unit revealed 2x4 framing, ventilation piping with heavy plastic stapled to it, vacuum sealed bags with similar writing as those found at 128 Hamline, reflective plastic, and hydroponic clay balls, all similar to those found at 128 Hamline Ave. (T. at 215-217, 221-223). There was also a hydroponic water pump system, further documents in the name of Appellant, heavy black plastic and duct tape similar to that found in the basement at 128 Hamline Ave., and a hair salon chair with marijuana residue on it. (T. at 223, 226). The receipt for Indoor Gardens found in the Ford Explorer led detectives to visit Indoor Gardens and retrieve the merchant copy which showed that Appellant purchased grow lights and other materials using his Huntington Bank business account card. (T. at 235, 248-252, 362-363).

{¶17} The scene was processed, evidence collected, and sent away for testing and analysis. (T. at 254). The grinder, plastic bin, and lighting systems were processed for fingerprints. (T. at 337-338, 346-347). Five (5) of the fingerprints came back identifying Appellant, one fingerprint belonged to Howard Bailey. Colleena's prints were excluded from being on the evidence. (T. at 392, 394).

{¶18} The marijuana was tested and weighed and came back with a combined weight of 1.28 kilograms, or 1,280 grams. (T. at 439, 445-446). The hashish was tested and weighed 13.05 grams, the methamphetamine was tested and weighed less than 0.10 grams. (T. at 467-469).

{¶19} During the search, Appellant called Detective Todd Kanavel. Appellant was upset and asking why they were searching the house. (T. at 415). Appellant called back asking if he needed to turn himself in, and while referring to the grow lights, stated "the stuff isn't even turned on". (T. at 416-17).

{¶20} On October 12, 2016, Appellant was indicted as follows:

Count 1: Possession of drugs (Marijuana), in violation of R.C. §2925.11(A), a felony of the third degree,

Count 2: Cultivation of Marijuana, in violation of R.C. §2925.04(A), a felony of the third degree, with a forfeiture specification;

Count 3: Possession of drugs (Hashish), in violation of R.C. §2925.11(A), a felony of the fifth degree;

Count 4: Possession of drugs (Methamphetamine), in violation of R.C. §2925.11(A), a felony of the fifth degree;

Count 5: Possession of criminal tools, in violation of R.C. §2923.24(A), felony of the fifth degree;

Count 6: Money laundering, in violation of R.C. §1315.55(A), a felony of the third degree, with a forfeiture specification.

**{¶21}** On January 31, 2017, Appellant filed a motion to suppress.

**{¶22}** On February 10, 2017, a hearing was held on Appellant's motion to suppress. The trial court denied the motion.

**{¶23}** On February 12, 2017, a jury trial commenced in this matter. One hour into *voir dire*, the trial was continued due to Appellant's wish to fire his counsel and Appellant's counsel moving the court to allow him to withdraw as counsel.

**{¶24}** On May 24, 2017, the second jury trial began, lasting three days. At trial, the jury heard testimony from Det. Matt Wilhite, Kevin Starrett, Michael Wilson, Josh Durst, Isaac Reed, Howard Bailey, Ashley Own, Kelly Gibson, Brittany Ward, Todd Kanavel, K.C. Jones, Dan Reinstetle and Martin Leweis on behalf of the state of Ohio and Jerome Viney on behalf of the defense.

**{¶25}** Following deliberations, the jury found Appellant guilty on Counts One, Two, Three, Five and Six, and the forfeiture specifications.

**{¶26}** On June 14, 2017, a sentencing hearing was held. At said hearing, the trial court merged Counts One and Two for purposes of sentencing and sentenced Appellant to thirty (30) months on those counts, twelve (12) months on Count Three, twelve (12) months on Count Five, and thirty (30) months on Count Six. Counts Two and Six were ordered run consecutively to one another. Counts Three and Five were ordered to run

concurrently with each other and with the sentence on Counts Two and Six, for an aggregate prison term of sixty (60) months.

**{¶27}** Appellant now appeals, raising the following assignments of error on appeal:

### ASSIGNMENTS OF ERROR

**{¶28}** "I. IT IS STRUCTURAL ERROR TO DEPRIVE THE APPELLANT HIS PRESUMPTION OF INNOCENCE BY ALLOWING A WITNESS TO TESTIFY REGARDING PRIOR CONVICTIONS.

**{¶29}** "II. THE CONVICTION FOR THE POSSESSION CHARGES WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶30}** "III. THE CONVICTION FOR MONEY LAUNDERING WAS NOT SUPPORTED BY THE MANFIEST [SIC] WEIGHT OF THE EVIDENCE.

**{¶31}** "IV. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR A JURY VIEW."

**I.**

**{¶32}** In his first assignment of error, Appellant argues that the trial court erred in allowing a witness to testify regarding Appellant's prior convictions. We disagree.

**{¶33}** At issue is a statement made by Howard Bailey who testified that he "worked in his [Appellant's] shop when he was incarcerated." (T. at 365).

**{¶34}** Appellant argues that Mr. Bailey's statement diluted his presumption of innocence.

**{¶35}** Upon review, we find defense counsel objected to the Mr. Bailey's statement, and the trial court sustained the objection and gave the jury a curative

instruction: "You're to disregard anything with that intention, or whatever was stated you're to disregard and not consider for any purpose." (T. at 365).

**{¶36}** A jury is presumed to have followed the instructions, including curative instructions, given by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634 (1995); *State v. Loza,* 71 Ohio St.3d 61, 75, 641 N.E.2d 1082, 1100 (1994); *State v. Ahmed*, 103 Ohio St.3d 27, 2004–Ohio–4190, 813 N.E.2d 637, ¶ 93. Curative instructions are presumed to be an effective way to remedy errors that occur during the trial. *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001–Ohio–4, 739 N.E.2d 749.

**{¶37}** Appellant has not pointed to any evidence in the record that the jury failed to do so in this case. *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017–Ohio–7861. This statement was isolated in the trial, and we do not find that it was so prejudicial that an impartial verdict could not be reached. Further, the statement was immediately followed by a short, authoritative instruction to the jury to disregard the statement, which was sufficient to remedy any possible error regarding the struck testimony.

**{¶38}** Further, based on the fact that the jury acquitted Appellant on one of the charges against him, we do not find that an impartial verdict could not be reached.

**{¶39}** Appellant's first assignment of error is overruled.

**II.**

**{¶40}** In his second assignment of error, Appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because the state failed to sufficiently prove the element of "possession," and the jury's verdict was against the sufficiency of the evidence. We disagree.

**{¶41}** Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶42}** The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

**{¶43}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶44}** We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio

St.3d 353, 595 N.E.2d 915 (1992). It is to be given the same weight and deference as direct evidence. *Jenks, supra.*

**{¶45}** Appellant herein was found guilty of possession of marijuana and possession of hashish, both in violation of R.C. §2925.11 which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant complains that the state did not prove "possession."

**{¶46}** R.C. §2925.01(K) defines "possess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶47}** Possession may be actual or constructive. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Holman,* 5th Dist. Stark No. 2017CA00114, 2018–Ohio–1373, ¶ 25, citing *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Barr,* 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247–248 (8th Dist. 1993); *State v. Morales,* 5th Dist. Licking No. 2004 CA 68, 2005–Ohio–4714, ¶ 50; *State v. Moses,* 5th Dist. Stark No. 2003CA00384, 2004–Ohio–4943,¶ 9. Ownership of the contraband need

not be established in order to find constructive possession. *State v. Smith,* 9th Dist. Summit No. 20885, 2002–Ohio–3034, ¶ 13, *citing State v. Mann,* 93 Ohio App.3d 301, 308, 638 N.E.2d 585 (8th Dist.1993). Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item of contraband simultaneously. *State v. Pitts,* 4th Dist. Scioto No. 99 CA 2675, 2000–Ohio–1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson,* 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365 (1982), certiorari denied, 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130 (1982).

**{¶48}** Here, the jury heard testimony as set forth above that Appellant possessed the drugs which were found at the premises and that Appellant was living at the premises.

**{¶49}** Upon review, we find sufficient evidence was presented to overcome the Crim.R. 29 challenge.

**{¶50}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact, in this case, the jury. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶51}** Upon review, we find sufficient evidence to support the conclusion that Appellant was able to exercise dominion and control over the marijuana and hashish and therefore was in possession of drugs, and we do not find any manifest miscarriage of justice.

**{¶52}** Accordingly, Appellant's second assignment of error is overruled.

**III.**

**{¶53}** In his third assignment of error, Appellant argues his conviction for money laundering was not supported by the manifest weight of the evidence.  We disagree.

**{¶54}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also, State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260.

**{¶55}** Appellant was convicted of money laundering, in violation of R.C. §1315.55(A)(3) which states:

**{¶56}** "No person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity."

**{¶57}** At trial, the state presented evidence that Appellant's credit card was used to purchase fluorescent grow lights from Indoor Gardens, and that these lights were used

to grow marijuana. Appellant's fingerprints were found on the light. Evidence was also presented that Appellant's business account was used to rent a storage unit to keep the grow materials. Further, the materials found in the grow rooms matched the materials found in the storage unit.  These actions, taken together show that Appellant conducted and engaged in transactions for the purpose of carrying on a corrupt activity, that being the cultivation of marijuana and resulting possession of marijuana.

{¶58} Upon review, we find the jury did not lose its way or create a manifest injustice in finding that Appellant's actions constituted money laundering.

{¶59}  Appellant's third assignment of error is overruled.

**IV.**

{¶60} In his fourth assignment of error, Appellant argues the trial court erred in denying his motion for a jury view.  We disagree.

{¶61} R.C. §2945.16 provides in pertinent part:

> When it is proper for the jurors to have a view of the place at which a material fact occurred, the trial court may order them to be conducted in a body, under the charge of the sheriff or other officer, to such place, which shall be shown to them by a person designated by the court. While the jurors are absent on such view no person other than such officer and such person so appointed, shall speak to them on any subject connected with the trial. The accused has the right to attend such view by the jury, but may waive this right.

{¶62} A trial court has broad discretion in deciding whether to permit jury views, and its decision "will not be disturbed absent an abuse of discretion." *State v. Zuern,* 32

Ohio St.3d 56, 58, 512 N.E.2d 585 (1987). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶63} Appellant moved for a jury view of both the duplex and the storage unit. Initially we note that counsel for Appellant advised the trial court in chambers and again on the record that they would be unable to get in to the storage unit.

{¶64} The trial court denied the jury view of the duplex after hearing arguments that the jury view of the duplex would only be duplicative to the numerous photographs taken of the scene, and that the residents of the adjoining unit would not be happy with having the jury "tromp through the place".  The state argued that a jury view would not add anything, and that it was evidentiarily unnecessary.

{¶65} Based on the state's arguments, we do not find that the trial court abused its discretion in denying the request for a jury view.

{¶66} Furthermore, the denial of the jury view did not preclude Appellant from presenting other evidence to establish that others may have had access to the attic in the duplex. Appellant was able to offer testimony about the layout of the duplex. Appellant was also able to present his own photographs of the inside of the duplex. Thus, the court's denial of the jury view did not preclude Appellant from establishing facts he wished to make known to the jury.

**{¶67}** Appellant's fourth assignment of error is overruled.

**{¶68}** Accordingly, the judgment of the Muskingum County Common Pleas Court is affirmed.

By: Wise, P. J.

Hoffman, J., and

Baldwin, J., concur.


JWW/d 0608