ELLER MEDIA COMPANY, Plaintiff,

v.

CITY OF CLEVELAND, OHIO, Defendant.

No. 1:99 CV 276.

United States District Court, N.D. Ohio, Eastern Division.

Aug. 10, 2001.

798

Bruce O. Baumgartner, Thomas H. Shunk, David L. Marburger, Kyle B. Fleming, Baker & Hostetler, Cleveland, OH, for Plaintiff.

Frederick R. Nance, Steven A. Friedman, Catherine Corrigan Tompkins, Squire, Sanders & Dempsey, Cleveland, OH, Kathleen A. Martin, Donna M. Andrew, Cornell P. Carter, Ronald J. O'Leary, City of Cleveland, Dept. of Law, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon Defendant's Motion for Summary Judgment, (Doc. # 125), and Plaintiff's Cross–Motion for Summary Judgment, (Doc. # 128). For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED in its entirety. Accordingly, Defendant's Cross–Motion for Summary Judgment is thereby DENIED.

## I. BACKGROUND [1]

Plaintiff Eller Media Company is in the outdoor advertising business and owns hundreds of billboards in the City of Cleveland. On February 9, 1999, Plaintiff filed the instant action in this Court against Defendant City of Cleveland, Ohio. In the Complaint, Plaintiff generally seeks "to enjoin Defendant from enforcing the provisions of a municipal ordinance that criminalizes the advertising of alcoholic beverages on billboards and other publicly visible signs throughout most of the City..." Compl. at ¶ 1. The ordinance states, in pertinent part:

## CHAPTER 680B

## ALCOHOLIC BEVERAGE ADVERTISING ON PUBLICLY VISIBLE LOCATIONS

*Section 608B.01 General Requirements*

---

1. The factual summary is based upon the parties' statements of fact. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

(a) Alcoholic Beverage Advertisements. No person may place or display any sign, poster, placard, device, graphic display, or other form of advertising that advertises alcoholic beverages in a publicly visible location or at any location visible from a sidewalk, street, or highway. As used in this section, "Publicly Visible Location" includes outdoor billboards, sides of buildings, roofs of buildings, and freestanding signboards.

(b) This section shall not apply to the following:

(1) The placement or display of signs, including advertisements:

A. inside any building used by a holder of any liquor permit as prescribed in Chapter 4303 of the Ohio Revised Code and intended to be read from the inside of the building; or

B. on the commercial vehicles used for transporting alcoholic beverages; or

C. in conjunction with a 1–day liquor permit or a temporary permit granted by the Liquor Control Commission.

(2) Any banners, inflatable signs, or pennants located at a special event, for which a temporary sign permit has been issued by the Division of Building and Housing, provided that the temporary sign permit limits the display of said banners, inflatable signs, or pennants to no more than fourteen (14) calendar days.

(3) *Any sign placed in conformity with division (F) of Section 4301:1–1–44 of the Ohio Administrative Code. Nothing in this section, however, shall abrogate any ordinance, rule or regulation of the City concerning the total area of window space that may be devoted to interior signs.*

(4) Any sign located:

A. in the Central Business District;

B. in the Flats–Oxbow Business Revitalization District;

C. in such manner that the advertisement on the sign is visible only from the rights-of-way of Interstate Routes 71, 77, 90, 480, and 490; or

D. in an Unrestricted Industry District located more than 1,000 feet from the boundary of any zone other than the Central Business District, the Flats–Oxbow Revitalization District, or an Unrestricted Industry District.

*Section 680B.99 Penalty*

Whoever violates the provisions of Section 680B.01 shall be guilty of a misdemeanor of the first degree and shall be fined one thousand dollars ($1,000.00), or shall be sentenced to a prison term of six months, or both. Said fine or prison term shall not be suspended, waived, or otherwise reduced below the amount or term indicated herein. Each day upon which the violation of Section 680B.01 continues shall constitute a separate offense.

Compl., Ex. 1 at 7–8 (emphasis in original). In support of its position that the ordinance is invalid, Plaintiff sets forth two separate counts in the Complaint.

Count I of the Complaint specifically relates to the constitutionality of City of Cleveland Ordinance 989–97, codified at § 680B.01 (the "ordinance"). As quoted above, the ordinance imposes criminal prosecution and corresponding penalties upon any person who displays in a publicly visible location within the City of Cleveland any form of advertising for alcoholic beverages, except in certain limited circumstances and limited geographic areas within the City. Plaintiff claims that this ordinance deprives it of its rights and privileges guaranteed by the First and Fourteenth Amendments to the United States Constitution. In Count II of the Complaint, Plaintiff claims that the ordinance is

inconsistent with, and contrary to, the laws of the State of Ohio relating to the advertising of alcohol. On this basis, Plaintiff claims that the ordinance is preempted by state law and is, therefore, null and void.

With respect to remedies for this alleged harm, Plaintiff requests this Court to issue a preliminary and permanent injunction enjoining and restraining Defendant from enforcing the ordinance. Furthermore, Plaintiff asks this Court to declare the ordinance to be preempted by state law and in violation of the First and Fourteenth Amendments. Finally, Plaintiff requests that it be awarded reasonable attorney's fees, costs, and expenses pursuant to federal law, including 42 U.S.C. § 1988.

On March 16, 2001, Defendant filed a Motion for Summary Judgment, (Doc. # 125), and a corresponding Memorandum in Support, (Doc. # 126). Three days later, on March 19, 2001, Plaintiff filed its Motion for Summary Judgment, (Doc. # 128), and Memorandum in Support, (Doc. # 129). On March 23, 2001, Plaintiff filed an additional Memorandum in Support of its Motion. (Doc. # 132) Defendant filed a Motion to Strike any additional memoranda of law filed in support of Plaintiff's Motion for Summary Judgment. (Doc. # 131) This Court granted the Motion to Strike in part, finding that although it would accept the March 19 filing, Plaintiff was prohibited from making any further filings concerning the Motion without prior express leave of Court.

After the Court's grant of several extensions to Plaintiff's counsel, Plaintiff filed three separate Memoranda in Opposition to Defendant's Motion for Summary Judgment on April 10, 2001. The first Memorandum in Opposition to Defendant's Motion is based upon state law preemption. (Doc. # 169) The second Memorandum in Opposition applies the intermediate scrutiny standard set forth in *Central Hudson*

*Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) to the instant case. (Doc. # 170) The third Memorandum concerns the issue of judicial deference to the City's legislative judgment. (Doc. # 171) On the same date, Plaintiff filed a Reply Brief in support of its own Motion for Summary Judgment. (Doc. # 172)

On April 16, 2001, Defendant filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. (Doc. # 144). Thereafter, on May 2, 2001, counsel for Plaintiff filed, and this Court subsequently granted, a Motion to Substitute the "correct memorandum" for an "incorrect memorandum" filed on April 30, 2001. (Doc. # 180). On May 16, 2001, Defendant filed its Reply Brief in support of its Motion for Summary Judgment. (Doc. # 183) Against the backdrop of this procedural posture, the cross-Motions for Summary Judgment are now fully briefed and properly before the Court for consideration.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (cit-

ing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 149 (6th Cir.1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. United States,* 20 F.3d 222, 225–26 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence

cannot be considered on a motion for summary judgment.

*Wiley,* 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. It is with this standard in mind that the instant Motions must be decided.

## III. DISCUSSION

In resolving the instant Motions, the Court shall first examine the extent to which, if at all, state law preempts the municipal ordinance at issue. The Court finds it most logical to examine the preemption claim first, because if, in fact, the ordinance is preempted, then the Court is not compelled to reach a decision as to its constitutional ramifications. Thereafter, to the extent that it is warranted based upon the preemption ruling, the Court shall address Plaintiff's constitutional challenge to the ordinance. In particular, the Court shall examine Plaintiff's claims that the ordinance violates its rights under the First and Fourteenth Amendments to the United States Constitution.

### A. State Law Preemption

In Count II of the Complaint, Plaintiff claims that the ordinance is preempted by state law. With respect to the preemption claim, Plaintiff explains that the Ohio General Assembly exercises "comprehensive control over the sale and advertising of alcohol in the State of Ohio through the Division of Liquor Control and the Liquor Control Commission." Compl. at ¶ 21. Plaintiff states that "[e]xcept for the limited role of local options regarding the sale of alcohol, the Ohio General Assembly intended to establish uniform alcohol law throughout the state, including the establishment of uniform rules and regulations over the advertising of alcoholic beverages." *Id.* at ¶ 22. For these reasons, Plaintiff contends that the ordinance is inconsistent with, and contrary to, Ohio law regarding the advertising of alcohol and is, therefore, null and void. *Id.* at ¶ 23.

More specifically, Plaintiff contends that the ordinance is preempted by Ohio law in two respects. (Doc. # 169 at 1) First, Plaintiff claims that Ohio's General Assembly has provided that only the state government may regulate the advertising of

alcoholic beverages. Next, Plaintiff asserts that the ordinance conflicts with state law because it forbids the advertising of alcoholic beverages, which state law permits. The Court examines these arguments in turn.

### 1. The Exclusive Right to Regulate

■ The question raised by the initial preemption argument in this context is whether the City of Cleveland's municipal ordinance attempts to regulate in an area over which the Ohio General Assembly exercises exclusive control. In making the argument that the State of Ohio has fully and completely preempted local regulation of the advertising of alcoholic beverages, Plaintiff relies upon Ohio Revised Code Chapter 4301.03(E). That section provides that Ohio's liquor control commission "may" establish certain standards, including "[u]niform rules governing all advertising with reference to the sale of beer and intoxicating liquor throughout the state and advertising upon and in the premises licensed for the sale of beer or intoxicating liquor." Plaintiff contends that because the City has attempted to regulate the advertising of alcohol, an area that Ohio has expressed the desire to control in its entirety, the municipal ordinance at issue is preempted. (Doc. # 169 at 3).

■ The State of Ohio addresses municipal powers of local self-government in the "Home Rule Amendment" located in Article XVIII, Section 3 of the Ohio Constitution. The relevant provision states that "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." This Home Rule Amendment confers a high degree of sovereignty upon municipalities within the State of Ohio. *See Weir v. Rimmelin, et al.,* 15 Ohio St.3d 55, 56, 472 N.E.2d 341 (1984). Accordingly, the General Assembly must demonstrate a legislative attempt to preempt municipal regulation of a certain subject matter before a court can find preemption on this basis. *See id.*

■ In the instant case, Plaintiff bears the burden of setting forth evidence to demonstrate legislative intent to preempt municipal regulation of outdoor advertising relating to alcoholic beverages. In an attempt to satisfy this burden, Plaintiff refers to the following passage from Ohio Amended Substituted Senate Bill 162, Section 24:

This act is in no way intended to change, alter, or weaken the state's exclusive statewide authority to regulate, in a uniform manner, the manufacture, distribution, and sale of alcoholic beverages in the state as set forth in Title XLIII of the Ohio Revised Code; nor is this act intended in any way to derogate from the authority granted to this state by Amendment XXI to the United States Constitution.[2] Any executive or legislative authority of a political subdivision has only such rights or powers with regard to the regulation of alcoholic beverages as are expressly granted under Title XLIII of the Ohio Revised Code.

(Doc. # 169 at 2) (quoting Am. Sub. S.B. No. 162, § 24 (Oct. 25, 1995)) Plaintiff argues that the foregoing means that "state law prohibits political subdivisions, such as Cleveland, from regulating alcohol[ic] bev-

---

**2.** The Twenty–First Amendment guaranteed that the transportation of intoxicating liquor into a state for the delivery or use therein would be governed by the laws of that state. Specifically, it provides, "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI § 2.

erage advertising unless they are expressly given the power by Title XLIII of the Ohio Revised Code." *Id.* Based upon its position that Title XLIII does not grant local government the power to regulate the advertising of alcoholic beverages, Plaintiff contends that the power is reserved to the state pursuant to Ohio Revised Code § 4301.03(E). *Id.*

While Ohio law does provide that Ohio's liquor control commission "may" establish certain standards, including uniform rules governing advertising with reference to the sale of beer and intoxicating liquor throughout the state, it does not make clear that a municipality is specifically preempted from regulating in the area.[3] Moreover, even if the above-quoted Amended Substitute Senate Bill is binding upon this Court, its reference to the state's "exclusive statewide authority" relates directly to the "manufacture, distribution, and sale of alcoholic beverages," not to the legal advertising of such beverages. Because there exists no evidence in the record to demonstrate the legislature's intent to entirely preempt municipal regulation in this area, the Court concludes that a municipality, such as the City of Cleveland, may lawfully regulate outdoor advertising of alcoholic beverages as a legitimate exercise of local self-government, so long as such regulations do not conflict with a general law of the State of Ohio. Hence, the Court finds Plaintiff's first argument relating to preemption to be without merit. This brings the Court to Plaintiff's second argument with respect to this issue, in which it contends that the local ordinance is invalid because it is substantively inconsistent with the related Ohio statute.

## 2. The Ordinance's Alleged Conflict with Ohio Law

Plaintiff contends that the ordinance is preempted because it "conflicts with state law since it forbids alcohol advertising which state law permits." (Doc. # 169 at 4) As recognized previously, Article XVIII, Section 3 of the Ohio Constitution grants municipalities the authority to exercise local self-government, with power to adopt and to enforce within their limits regulations that are not in conflict with general laws relating to affairs of statewide interest. *See e.g., Neil House Hotel Co. v. City of Columbus, et al.,* 144 Ohio St. 248, 251, 58 N.E.2d 665 (1944) (stating that when municipal regulations "conflict with general laws relating to affairs of state-wide interest, the general laws are paramount"). In support of its argument that the ordinance is in conflict with the law of the State of Ohio, Plaintiff relies upon the cases of *Neil House Hotel Co. v. City of Columbus, et al.,* 144 Ohio St. 248, 58 N.E.2d 665 (1944) and *Williams v. City of Jackson,* 164 N.E.2d 195 (Ohio Ct. Comm. Pleas 1959). In those cases, attempts by municipalities to restrict the sale of alcohol beyond a certain hour were held to be in conflict with an Ohio law which permitted sale beyond the hour in question. *Neil House Hotel Co.,* 144 Ohio St. at 253, 58 N.E.2d 665; *Williams,* 164 N.E.2d at 199. On this basis, the ordinances at issue were held to be preempted and, therefore, null and void. *Neil House Hotel Co.,* 144 Ohio St. at 253, 58 N.E.2d 665; *Williams,* 164 N.E.2d at 199. Consistent with this principle, Plaintiff argues that the ordinance at issue is an attempt by the municipality to restrict conduct

**3.** Ohio's scheme in this regard has been referred to as a model demonstrating state control with consideration of local input. *See* Saxter, Shelley Ross. *"Down With Demon*

*Drink!": Strategies for Resolving Liquor Outlet Overconcentration in Urban Areas,* 35 SANTA CLARA L. REV. 123, 137 (1994).

which state law has similarly held to be lawful.

"In determining if a municipal ordinance is in conflict with a general state statute, 'the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" *Weir,* 15 Ohio St.3d at 57, 472 N.E.2d 341 (quoting *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923)). In examining whether such a conflict exists in the context of this case, the Court first takes note of the rules concerning advertising of alcoholic beverages set forth in Ohio Administrative Code Chapter 4301:1–1–44. That provision states, in pertinent part:

No alcoholic beverages shall be advertised in Ohio except in the manner set forth in rule 4301:1–103 of the Administrative Code and as hereinafter provided.

(A) Manufacturers and distributors of alcoholic beverages are permitted to advertise their products in Ohio.

Holders of class C, D, and G permits shall be authorized to advertise in newspapers of general circulation, radio and television, on billboards, exterior signs, calendars, in or on public conveyances and in regularly published magazines. Advertising may include the retail price of all alcoholic beverages.

(B) Manufacturers and distributors of spirituous liquor are hereby permitted to advertise their various products in Ohio, and such advertising may contain the statement that spirituous liquor may be purchased in original packages together with the liquor agency prices thereof. Advertising shall not in any manner misrepresent the products advertised and shall be dignified in make-up and not offensive to the good taste of the public.

(C) No billboard or exterior signs whatsoever advertising any brand of alcoholic beverage shall be permitted on the exterior of the premises for which any class C or D permit is issued.

No such advertising will be permitted in the immediate vicinity of any church, school or public playground.

No advertising copy shall, in its composition, condone or encourage excessive use of alcoholic beverages, nor shall illustrations in said advertising portray intoxication or lewdness.

Advertising which includes the likeness or caricature of a person shall be prohibited if such likeness or caricature exploits the human form in an immodest, vulgar or sensuous manner, or is made the primary appeal of the advertisement.

No advertising or representation portraying pictures of persons, children, religious subjects, festive events, or similar scenes shall be permitted if the commission determines the advertising to be offensive or not in good taste.

No advertising shall refer or portray any military subject or any picture or reference to Santa Claus.

Thus, according to this provision, manufacturers and distributors of alcoholic beverages are permitted to advertise their products on billboards and exterior signs in Ohio. In addition, the geographic location deemed appropriate for this type of advertising does not extend to the immediate vicinity of any church, school, or public playground.

Against that backdrop of this rule appears the ordinance at issue, which broadly prohibits advertising of alcoholic beverages in a "publicly visible location or at any location visible from a sidewalk, street, or highway." Although the ordinance does contain a series of exceptions, stating that the prohibition shall not apply to, *inter alia,* any sign located in: (1) the Central Business District; (2) the Flats–Oxbow

Business Revitalization District; (3) a manner such that the advertisement on the sign is visible only from the rights-of-way of Interstate Routes 71, 77, 90, 480, and 490; or (4) an Unrestricted Industry District located more than 1,000 feet from the boundary of any zone other than the Central Business District, the Flats–Oxbow Revitalization District, or an Unrestricted Industry District, it arbitrarily prohibits that which the law of the State of Ohio permits. That is, the ordinance serves to prohibit the advertising of alcoholic beverages in areas where it is otherwise legal under state law to do so. In this way, the restrictive nature of the ordinance places it in conflict with the more general statewide statute. Due to this conflict, the ordinance at issue is preempted and, therefore, null and void.

Defendant urges this Court to find to the contrary, asserting that "[n]either O.R.C. § 4301.03 nor O.A.C. § 4301:1–1–44 creates a right for alcohol manufacturers and distributors to advertise at every time, in every place, and in all manners an advertiser may choose." (Doc. # 183 at 14) In support of this position, Defendant directs this Court to *Eller Media Co. v. City of Oakland,* 1998 WL 549494, *4–5, No. C9802237, 1998 U.S. Dist. LEXIS 13319, *14–15 (N.D.Cal. Aug. 27, 1998), stating that its holding reflects that: "where state law does not create a specific right to place advertisements in any and all locations, a local law banning billboard advertising of alcohol does not contradict state law and is not preempted." *Id.* A thorough reading of this non-binding decision before that court on a motion for a preliminary injunction, however, reveals that the court made the preemption ruling on a different basis. That is, in addressing an ordinance that is strikingly similar to the one involved here, the court made the following ruling with respect to preemption:

Plaintiffs' first claim for injunctive relief is that the Ordinance is preempted by the California Alcoholic Beverage Control Act ("CABCA"), a state law which prohibits "the use in any advertisement of alcoholic beverages of any subject matter, language, or slogan addressed to and intended to encourage minors to drink the alcoholic beverages." The Court DENIES a preliminary injunction based on this ground. Even if plaintiffs are entirely correct that the Ordinance is preempted by CABCA, they have failed to allege any injury to them flowing from this fact. Although they make scattered allegations of pecuniary loss, plaintiffs' argument for irreparable injury is essentially that the Ordinance threatens theirs and the public's right of free expression. As such, Plaintiffs' first claim is parasitic on their constitutional claims.

*Eller Media Co.,* 1998 WL 549494 at *3, No.C9802237, 1998 U.S. Dist. LEXIS 13319 at *9. Thus, the court rendered its decision based upon the standard appropriate for a motion for a preliminary injunction.

In the instant case, the matter is brought before the Court on cross-Motions for Summary Judgment. It is well-established that the standard which applies to a motion for a preliminary injunction is different from that used on a motion for summary judgment. *See e.g., Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 292 (7th Cir.1998). In order to prevail on a motion for a preliminary injunction, a court must consider the following four criteria: (1) whether the movant has demonstrated a strong or substantial likelihood of success on the merits; (2) whether the movant has shown irreparable injury; (3) whether the preliminary injunction could harm third parties; and (4) whether the public interest is served by issuing the

preliminary injunction. *See Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985). Thus, "[t]he limited purpose of a preliminary injunction is to preserve the status quo and prevent irreparable injury, not to provide an evidentiary basis for granting summary judgment." *eMachines, Inc. v. Ready Access Memory, Inc.*, No. EDCV00–00374–VA-PEEX, 2001 WL 456404, at *4 (C.D.Cal. Mar.5, 2001). Accordingly, the court's ruling in *Eller Media Co.*, 1998 WL 549494 at *3, No.C9802237, 1998 U.S. Dist. LEXIS 13319 at *9, which is based upon the plaintiff's failure to demonstrate the irreparable injury required for a preliminary injunction to issue, is not instructive here.[4] Rather, the Court's duty in this context is to determine whether there is a genuine issue of material fact as to the claim of preemption.[5] Pursuant to this standard, and for the reasons set forth above, the Court finds that the ordinance at issue is preempted and, therefore, null and void.

The Court notes that in deciding that the ordinance is in conflict with existing Ohio law of general application and, thus, preempted, it also recognizes that, on a policy level, the ordinance in question is a noteworthy attempt to address the social

---

4. The same would be true were the matter before the court on a motion for a permanent injunction. That is, the standard for the issuance of a permanent injunction is essentially the same as that for the issuance of a preliminary injunction. In order to prevail, the plaintiff must satisfy the following three criteria: (1) a violation of the applicable constitutional, statutory, or regulatory authority by the defendant; (2) irreparable injury to the plaintiff in the absence of an injunction; and (3) lack of an adequate remedy at law. *See N.H. Newman v. Alabama*, 683 F.2d 1312, 1319 (11th Cir.1982). This standard differs from the standard used to review motions for preliminary injunctions in only two respects. First, when a plaintiff seeks a permanent injunction, the plaintiff must show actual success on the merits, rather than a mere likelihood of success on the merits. *See Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Second, a court facing a motion for a preliminary injunction must weigh the potential harm to the defendant resulting from an injunction, while a court deciding whether to grant permanent injunctive relief does not do so. This difference "may be explained by the fact that a permanent injunction is awarded against a defendant who has been found to have violated a statute or regulation, while a preliminary injunction is awarded against a party found likely to have done so." *Sierra Club v. U.S. Army Corps of Engineers*, 935 F.Supp. 1556, 1571 (S.D.Al. 1996).

Furthermore, although a permanent injunction does require irreparable injury, as most equitable remedies do, this Court is not inclined to rule on that issue as did the court in *Eller Media Co. v. City of Oakland*, because a practical understanding of the nature of the business reveals a high degree of difficulty in quantifying any economic harm from a prohibition on outdoor advertising which, in and of itself, may sustain injunctive relief. That is, in cases in which there is undoubtedly economic harm, but the amount of harm is difficult or impossible to determine, the court may issue the injunction because the injury is "irreparable" in the sense that it can never be accurately quantified. *See e.g., Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (stating that "an injury is not fully compensable by money damages if the nature of plaintiff's loss would make damages difficult to calculate").

5. The Court acknowledges that Defendant refers to another non-published, non-binding decision made by the same California district court found at *Eller Media Co. v. City of Oakland*, 1998 WL 549494, 1998 U.S. Dist. LEXIS 18616 (N.D.Cal. Nov. 25, 1998), which addresses the issue of preemption in the context of a motion for summary adjudication. Although this Court's ruling on the issue of the exclusive right to regulate reflects that of the California court, the ruling on the issue of substantive conflict with state law is inapplicable because the law at issue there, namely the California Alcoholic Beverage Control Act, is distinct from the law at issue here. In any event, however, that decision is in no way binding upon this Court.

problem of minor abuse of alcohol. As the Honorable John V. Corrigan stated in *Square Deal Coal Haulers and Yardmen's Club, Inc. v. City of Cleveland et al.,* 176 N.E.2d 348, 352 (Ohio Ct. Comm. Pleas 1961), a case in which an attempt to police liquor control traffic was held to be in conflict with state law:

> Personally this Court is in sympathy with the aims of the Mayor and the Council in their attempts to police the retail liquor traffic because the authorities of any particular municipality are in a position to know the needs and requirements of the community and what regulations will best serve that purpose. However, because of the clarity of the laws governing liquor control within this state the Court must be intellectually honest and declare that the ends sought must be achieved by action by the electors or by legislative revision and not by means of legalistic legerdemain.

As in that case, the ordinance at issue here is in conflict with the Ohio statute governing such advertising in that it arbitrarily seeks to restrict otherwise legal conduct in certain specified geographic areas. For this reason, despite having arguable merit on a policy level, the Court finds the ordinance to be preempted by state law and, therefore, invalid.

### B. Constitutionality of the Ordinance

Moreover, Plaintiff also claims that facially and as applied, the City's ordinance deprives it of its rights and privileges guaranteed by the United States Constitution. Compl. at ¶ 18. With respect to this issue, the Court finds that, even if Defendant could clear the preemption threshold and, thus, overcome the apparent conflict

with state law, the Supreme Court's recent decision in *Lorillard Tobacco Co., et al. v. Reilly, et al.,* —— U.S. ——, 121 S.Ct. 2404, 2421–27, 150 L.Ed.2d 532 (2001), mandates a finding that the ordinance in question is unconstitutional in that it wrongfully deprives Plaintiff of its rights under the First Amendment.

In *Lorillard,* certain manufacturers and sellers of cigarettes, smokeless tobacco products, and cigars challenged regulations in the State of Massachusetts which restricted the sale, promotion, and labeling of tobacco products. *Id.,* 121 S.Ct. at 2404. In a decision written by Justice Sandra Day O'Connor, the majority of the Supreme Court held that, *inter alia,* the regulations prohibiting the outdoor advertising of smokeless tobacco or cigars within 1,000 feet of a school or a playground violated the First Amendment to the United States Constitution.[6] *Id.,* 121 S.Ct. at 2427. The majority reached this decision by analyzing the regulations of commercial speech under the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). *Id.,* 121 S.Ct. at 2421.

Under *Central Hudson's* four-part test for analyzing regulations of commercial speech, the reviewing court must determine whether: (1) the expression is protected by the First Amendment; (2) the asserted governmental interest is substantial; (3) the regulation directly advances the governmental interest asserted; and (4) it is not more extensive than necessary to serve that interest. *Id.,* 121 S.Ct. at 2421. The *Lorillard* Court found that only the last two steps were at issue in

---

**6.** The Supreme Court did not address the constitutionality of the regulations as they applied to outdoor and point-of-sale cigarette advertising, based upon its finding that such

regulations were preempted by the Federal Cigarette Labeling and Advertising Act (FCLAA), 15 U.S.C. § 1334. *Lorillard,* 121 S.Ct. at 2406–07.

that case.[7] *Id.* In particular, at issue were step three, which "requires that the government demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree," and step four, which "requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, a means narrowly tailored to achieve the desired objective." *Id.*, 121 S.Ct. at 2422 (internal quotations and citations omitted).

Although the Supreme Court ultimately found that the regulations satisfied the third step by directly advancing the governmental interest asserted to justify them, namely preventing minors from unlawfully using tobacco products, it found that the fourth step was unsatisfied because the costs and benefits associated with the burden on the speech imposed were not carefully calculated. *Id.*, 121 S.Ct. at 2425. The Supreme Court reached this decision based, in part, upon the fact that the regulations prohibited advertising in a substantial portion of Massachusetts' major metropolitan areas. *Id.* In fact, in some areas, the regulations would have constituted "nearly a complete ban on the communication of truthful information about smokeless tobacco and cigars to adult consumers." *Id.*

At the core of this position was the Supreme Court's acknowledgment that although a state may have a substantial or even compelling interest in preventing underage tobacco use, the fact remains that the sale and use of tobacco products by an adult is a legal activity. *Id.*, 121 S.Ct. at 2426. In observing that a speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products, the *Lorillard* Court held that, because the Attorney General failed to show that the regulations at issue were not more extensive than necessary, the regulations failed to satisfy step four of the *Central Hudson* test. *Id.* Thus, the Supreme Court found that the outdoor advertising regulations were insufficient for purposes of the First Amendment and were, therefore, unconstitutional. *Id.*, 121 S.Ct. at 2427.

Assuming for purposes of this Memorandum Opinion and Order that Defendant would be able to satisfy the first step in *Central Hudson*, thereby demonstrating that the expression contained in the outdoor advertising is protected by the First Amendment, and the second step in *Central Hudson*, showing that the governmental interest in reducing the use of alcohol by minors is substantial, this Court finds that there is a question as to Defendant's ability to satisfy steps three and four.[8] The Court now briefly addresses those steps as they apply to the facts of this case. More specifically, the Court first examines whether the ordinance directly advances the governmental interest, and next examines whether the ordinance is

---

**7.** The Attorney General assumed for purposes of summary judgment that the First Amendment protected the speech of the petitioners, none of whom contested the interest of Massachusetts in preventing minors from unlawfully using tobacco products. *Lorillard*, 121 S.Ct. at 2419.

**8.** In its Memorandum in Support of Motion for Summary Judgment on the Ground that the Penal Ordinance Violates the First Amendment Because It Criminalizes Straight-

forward, Nondeceptive Commercial Speech that Advertizes a Lawful Product, (Doc. # 132 at 10), Plaintiff asserts that strict scrutiny is the appropriate standard of review. In *Lorillard*, however, the majority made clear that *Central Hudson's* intermediate standard of review is applicable to a matter such as the one here, wherein the contested regulation is of speech that is strictly commercial in nature. *Lorillard*, 121 S. Ct at 2421.

more extensive than necessary to serve that interest.

### 1. Step Three: Advancement of the City's Interest

 The third step of *Central Hudson* requires the Court to examine the relationship between the harm that underlies the City's interest and the means identified by it to advance that interest. *See id.*, 121 S.Ct. at 2422. As explained by the *Lorillard* Court, the third step requires that:

> the speech restriction directly and materially advanc[e] the asserted governmental interest. This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.

*Id.* (internal quotations and citations omitted). In practical terms, the speech restriction may be justified by a wide-range of information, including but limited to studies, anecdotes, history, consensus, or even "simple common sense." *Id.*

Here, Plaintiff contends that Defendant is unable to satisfy the third step because, although it may have identified a problem with illegal underage drinking, it fails to set forth evidence to demonstrate that the ordinance will directly and materially reduce the problem. (Doc. # 170 at 17) In response, Defendant generally argues that "[b]oth common sense—a sense shared by clear Supreme Court precedent—and a raft of scientific and statistical information support the conclusion that advertising affects consumption of the advertised product." (Doc. # 126 at 15) Furthermore, Defendant states that it examined, *inter alia*, surveys and reports concerning underage use of alcohol and advertising, and expert testimony, including the testimony of various advertising industry representatives, in reaching its determination that the ordinance at issue was an appropriate and effective solution. (Doc. # 183 at 7) In this way, Defendant claims to have demonstrated that the restriction placed on the advertising of alcohol in the ordinance will directly advance its interest in reducing unlawful alcohol consumption by minors. (Doc. # 126 at 14)

In various cases, the Supreme Court has acknowledged the theory that product advertising stimulates demand for products, while suppressed advertising may have the opposite effect. *Lorillard*, 121 S.Ct. at 2423. Above and beyond this acknowledgment, however, Defendant bears the burden of directing this Court to the evidence offered to support this theory in the case of alcoholic products. *Id.* Other than making general assertions that the "legislative record is replete with studies supporting the conclusion" that the ordinance will directly and materially reduce the problem of minor consumption of alcohol, Defendant fails to specifically point to the particular evidence in the record in support of this position. Defendant's sole attempt to do so can be found in a string citation to the legislative record, which reads, "*See e.g.*[,] Mulock, Bruce, *Advertising of Alcoholic Beverages in Broadcast Media*, Congressional Research Service, Jan. 19, 1986 (attached in Legislative Record at Tab 15); Kilbourne, Jean, *Alcohol Advertising: A Call for Congressional Action*, Testimony Before the United States Senate Committee on Government[al] Affair[s] (June 29, 1998) (Tab 19); *The Impact of Alcohol Advertising and the Use of Alcohol in Television Programs and Films on Underage Drinking*, Report by the Prevention Committee of Governor William Donald Schaefer's Drug and Alcohol Commission, Neil Solomon, M.D.[,

Ph.D.] (Chair, Jan. 1993) (Tab 29); Caroline Schooler, Michael D. Basil, David G. Altman, *Alcohol and Cigarette Advertising on Billboards: Targeting with Social Cues*, Health Communications, Volume 8(2), pg. 109–120, 1996 (Tab 51)." (Doc. # 183 at 11) Thus, Defendant references a total of nearly one hundred pages in a string cite which are purportedly necessary for the Court to review in order to determine whether or not Defendant sets forth evidence to demonstrate that the ordinance will directly and materially reduce the problem at issue.

The Court notes that it does not have the duty to search the entire record to establish whether there is a genuine issue of material fact. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989). In other words, this Court does not have the burden to conduct a blanket review of nearly one hundred pages merely generally referred to by Defendant as supporting its position in order to ascertain whether those exhibits do, in fact, support Defendant's position. Rather, Defendant bears the burden of demonstrating to this Court how, if at all, the documents referred to in the citation provide evidentiary support for the proposition that the ordinance will directly and materially reduce the problem of underage consumption of alcohol. Despite Defendant's failure to do so, the Court finds that its own independent review of the record evidence in this case reveals information sufficient to satisfy the third step of *Central Hudson*. This being the case, the Court now turns to the "critical inquiry" in the fourth step, which requires a reasonable fit between the means and ends of the regulatory scheme. *Lorillard*, 121 S.Ct. at 2425.

## 2. Step Four: The Extensiveness of the Ordinance

■ Regardless of the strength of Defendant's evidence to justify the ordinance at issue, the ordinance will not be deemed constitutional if Defendant is unable to satisfy the final step of the *Central Hudson* analysis. *Id.*, 121 S.Ct. at 2422. The final step asks whether the restriction on speech is more restrictive than necessary to accomplish the ends that support it. *Id.* The Supreme Court has made clear that "the least restrictive means is not the standard; instead, the case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective." *Id.* (internal quotations and citations omitted). Thus, the fourth step requires a reasonable fit between the means and the ends sought to be achieved. *Id.*, 121 S.Ct. at 2425.

In the instant case, the Court finds that the fourth step remains unsatisfied because, as in *Lorillard*, the costs and benefits associated with the burden on the speech imposed are not carefully calculated. *Id.* In comparing this case to the *Lorillard* matter, the ordinance is similar in that it imposes a restriction on speech that extends to a substantial geographic area. *Id.* This includes the prohibition on the advertising of alcohol in a large portion of Cleveland's densely populated areas. *Id.* Thus, the ordinance could be said to constitute nearly a complete ban on the communication of truthful information about legal alcoholic products to adult consumers. *Id.*

In addition, as in *Lorillard*, the range of communications restricted by the ordinance also seems unduly broad. *Id.*, 121 S.Ct. at 2426. In the words of the Supreme Court with respect to this issue, "[t]o the extent that studies have identified particular advertising and promotion practices that appeal to youth, tailoring would involve targeting these practices

while permitting others." *Id.* As it stands, the ordinance makes no distinction among advertising practices on this basis. As was the case in the matter before the Supreme Court, the fact remains that the sale and use of alcoholic products, like tobacco products, by an adult is a legal activity. *Id.* Because a speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products, the Court finds that, because the City fails to show that the regulations at issue were not more extensive than necessary, it fails to satisfy step four of the *Central Hudson* test. *Id.* Thus, the outdoor advertising ordinance is insufficient for purposes of the First Amendment and, therefore, unconstitutional.[9] Finally, having determined that the ordinance in question is preempted by the law of the State of Ohio and, therefore, invalid, and having made the alternative finding that, even if the ordinance were not preempted, it is unconstitutional in that it unlawfully deprives Plaintiff of its First Amendment rights in accordance with the Supreme Court's recent decision in *Lorillard Tobacco Co., et al. v. Reilly, et al.,* —— U.S. ——, 121 S.Ct. 2404, 2421–27, 150 L.Ed.2d 532 (2001), the Court need not address Plaintiff's argument that the ordinance violates the Fourteenth Amendment to the United States Constitution. For the reasons set forth in this Memorandum Opinion and Order, Plaintiff's Motion for Summary Judgment is GRANTED in its entirety, (Doc. # 125), and Defendant's Cross–Motion for Summary Judgment is thereby DENIED, (Doc. # 128).

## IV. CONCLUSION

Therefore, upon consideration and being duly advised, Plaintiff's Motion for Summary Judgment is GRANTED in its entirety, (Doc. # 125), and Defendant's Cross–Motion for Summary Judgment is thereby DENIED, (Doc. # 128). More specifically, Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED on the grounds that the ordinance in question is preempted by the law of the State of Ohio and, therefore, invalid. Alternatively, even if the ordinance were not preempted, the ordinance is unconstitutional in that it unlawfully deprives Plaintiff of its First Amendment rights in accordance with the Supreme Court's recent

---

**9.** In its Motion for Summary Judgment, however, Defendant urges this Court to find that it satisfies the fourth step in *Central Hudson.* (Doc. # 126 at 16) In support of this position, Defendant states, "[t]wo federal appellate courts have already held that the scope of restrictions on commercial speech similar to the Ordinance—covering those areas where minors are most likely to live, walk, learn and play, and excluding those areas where minors are less likely to be present—is properly tailored under the relevant intermediate scrutiny test." *Id.* at 18. More specifically, Defendant relies upon the cases of *Consolidated Cigar Corp. v. Reilly,* 218 F.3d 30, 50–53 (1st Cir. 2000) and *Anheuser–Busch, Inc. v. Schmoke,* 101 F.3d 325, 328 (4th Cir.1996) in support of this position.

With respect to the *Reilly* case, that decision's ruling on the issue of outdoor advertis-

ing was reversed by the Supreme Court in *Lorillard Tobacco Co., et al. v. Reilly, et al.,* —— U.S. ——, 121 S.Ct. 2404, 2421–27, 150 L.Ed.2d 532 (2001), as discussed previously. Thus, despite Defendant's failure to notify the Court of such information, that decision no longer serves as persuasive authority in support of a ruling in Defendant's favor as to this issue. In this regard, the Court directs Defendant's counsel to Cannon 7 of the Ohio Code of Professional Responsibility, which provides that a lawyer must fully inform the tribunal of the applicable law, even if that law is directly adverse to the position of his client. *See* Ohio Code Prof. Resp. EC 7–23. Furthermore, because the Court finds the logic in *Lorillard* to be equally applicable to the facts of the *Schmoke* case, it is, likewise, unpersuaded by that non-binding authority.

decision in *Lorillard Tobacco Co., et al. v. Reilly, et al.,* —— U.S. ——, 121 S.Ct. 2404, 2421–27, 150 L.Ed.2d 532 (2001).

IT IS SO ORDERED.